**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| APPLICATION OF THE UNITED | ) | |
| STATES OF AMERICA FOR A WARRANT | ) | |
| AUTHORIZING | ) | **Case No. 14-mj-8116-TJJ** |
| | ) | |
| [REDACTED] | ) | |
| | ) | |

---

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| APPLICATION OF THE UNITED | ) | |
| STATES OF AMERICA FOR A WARRANT | ) | |
| AUTHORIZING | ) | **Case No. 14-mj-8219-TJJ** |
| | ) | |
| [REDACTED] | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the government's Amended Motions for Delayed Service of Notice in the above-captioned cases.[1]  Although each motion recites the separate facts of the two search warrants at issue, the government has attached to both motions the identical Supplemental Authorities in Support of the Amended Ex Parte Motions to Postpone Service of Notice.[2]  In these cases, the government makes out of time requests for orders authorizing a 90-day delay in service of  notice of  the execution of warrants authorizing the acquisition of

---

[1] Case No. 14-mj-8116-TJJ (ECF No. 8); Case No. 14-mj-8219-TJJ (ECF No. 8) ("Amended Motions").

[2] Case No. 14-mj-8116-TJJ (ECF No. 8-1); Case No. 14-mj-8219-TJJ (ECF No. 8-1) ("Supplemental Authorities").

location data concerning cellular telephones, pursuant to Fed. R. Crim. P. 41(f)(3) and 18 U.S.C. § 3103a(c). The first case involves a cellular telephone with call number [REDACTED] ("Target Telephone 1").[3] The second case involves a cellular telephone with call number [REDACTED] (Target Telephone 2").[4] The Court summarizes below the relevant facts as the government presents them.

### Facts

On June 18, 2014, the undersigned Magistrate Judge entered an order and issued a warrant in Case No. 14-mj-8116 ("Warrant 1"), allowing [REDACTED]  to obtain precise location data concerning Target Telephone 1 for a period of thirty days. The order authorized the government to delay notification for 30 days following the authorized monitoring period. [REDACTED] executed Warrant 1 on June 19, 2014 and ceased monitoring on July 17, 2014.

Similarly, the Court entered an order and issued a warrant in Case No. 14-mj-8219 on October 29, 2014 ("Warrant 2"), allowing [REDACTED] to obtain precise location data concerning Target Telephone 2 for a period of thirty days. The order authorized the government to delay notification for 30 days following the authorized monitoring period. [REDACTED] executed Warrant 2 on October 30, 2014 and ceased monitoring on November 28, 2014.

 The government states that the criminal investigation relative to these search warrants is ongoing and involves a continuing investigation into the distribution of controlled substances by the owner of the target telephones and other persons. The government contends there is reasonable cause to believe that immediate service of notice of the execution of these warrants to the owners of the property would have an adverse result, that is, "the serious jeopardizing of the

---

[3] Case No. 14-mj-8116-TJJ.

[4] Case No. 14-mj-8219-TJJ.

ongoing criminal investigation[s] in th[ese] matter[s], as defined and provided by Title 18, United States Code, Sections 3103a(b) and (c) and 2705(a)(2)(E)."[5] Specifically, the government contends such jeopardy "would result from notifying a major target of these investigations that he is under current scrutiny by law enforcement personnel."[6]

The government acknowledges that its authority to delay serving notice of Warrant 1 to the owner of the property expired on August 16, 2014 (or, in its words, "a motion for delayed service of notice of Warrant 1 was due to be filed on August 17, 2014").[7] It further acknowledges that had the Court granted an extension on August 17, 2014, its motion for a second extension would have been due 90 days later, or on November 14, 2014.[8] The government admits that it did not meet the statutory deadlines to obtain authorization to extend delay of notice. Indeed, the government did not file its First Motion for Delayed Service of Notice of Warrant 1 until January 7, 2015, at which time the government electronically filed its motion under seal.[9]

Similarly, the government acknowledges that a motion for delayed service of notice of Warrant 2 was due to be filed on December 27, 2014.[10] The government admits that it did not meet the statutory deadline to obtain authorization to extend delay of notice. Indeed, the Motion

---

[5] Amended Motions (ECF No. 8) at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] 14-mj-8116-TJJ (ECF No. 3).

[10] 14-mj-8219-TJJAmended Motion at 2.

for Delayed Service of Notice of Warrant 2 was not filed until January 7, 2015, at which time the government electronically filed its motion under seal.[11]

In each case, the First Motion for Delayed Service notes the date on which that motion was due and then states: "Due to a calendaring oversight, the United States failed to make a timely request for an order delaying service of notice."[12]  Neither motion includes any further explanation for the delinquent filings.

After reviewing the motions, the Court contacted the responsible Assistant United States Attorney and asked him to provide legal authority whereby the Court could excuse the missed deadline due to calendaring oversight and grant the motions. After consulting with the Court, the government moved to withdraw the motions for delayed service of notice.  The Court granted the motions to withdraw.[13]

The Court also granted the government's request for a January 23, 2015 deadline to refile its motions for delayed notice and to provide legal authority and argument which would excuse the delinquent filings. The government timely filed the Amended Motions and accompanying Supplemental Authorities in support of its "out-of-time ex parte request to postpone service."[14]

To date, the government has provided no notice to the owners of the property that Warrants 1 and 2 have been executed. The government requests that notice of the execution of these warrants be delayed for a period of ninety days, measured from January 7, 2015. The

---

[11] 14-mj-8219-TJJ (ECF No. 3).

[12] 14-mj-8116-TJJ First Motion (ECF No. 3) ¶ (4); 14-mj-8219-TJJ First Motion (ECF No. 3) ¶ (4).

[13] 14-mj-8116-TJJ, (ECF Nos. 4, 5); 14-mj-8219-TJJ (ECF Nos. 4, 5).

[14] Supplemental Authorities at 3.

government states that, in the event the ongoing investigation of this matter continues for longer than 90 days, it will submit further requests for orders delaying notice of execution of these warrants in accordance with the provisions of 18 U.S.C. § 3103a(c).

## The Government's Argument

The government summarizes its argument as follows.  Had it complied with the statutory deadlines in these cases, its motions would have shown good cause to justify a 90-day delay in its statutory obligation to provide notice because on each of the missed deadlines (August 17, 2014, November 14, 2014, and December 27, 2014) ("the material dates"), the investigation was active and progressing, and notice to the subscriber would have jeopardized the ongoing investigation. Consequently, the government argues that this Court should find the government's error constituted excusable neglect and should grant the Amended Motions.

The government relies on Federal Rule of Criminal Procedure 45(b)(1) as the basis for its argument.  Rule 45(b)(1) discusses a court's authority to grant belated requests for extensions of time based on excusable neglect.  The rule states as follows:

> When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
> (A)  before the originally prescribed or previously extended time expires; or
> (B)  after the time expires if the party failed to act because of excusable neglect.[15]

## Legal Standards

The U.S. Supreme Court discussed the term "excusable neglect" at length in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership.*[16]  Although the Court was interpreting the meaning of "excusable neglect" in the context of a Federal Rule of

---

[15] Fed. R. Crim. P. 45(b)(1).

Bankruptcy Procedure,[17] courts have applied the analysis in *Pioneer Investment Services* in criminal cases.[18] In *Pioneer Investment Services,* the Court noted that the ordinary meaning of "neglect" is "'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to *esp[ecially] through carelessness*.'"[19] Although inadvertence, ignorance of the rules, or mistakes in construing the rules do not usually constitute excusable neglect, it "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[20] The determination of whether excusable neglect exists "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[21] The burden of proof is on the moving party to show excusable neglect.[22]  Courts are to consider the following four factors in determining whether the moving party has met its burden: (1) the danger of prejudice to the nonmoving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for that delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[23]

---

[16] 507 U.S. 380 (1993).

[17] *Id.* at 388-97 (construing Fed. R. Bankr. P. 9006(b)(1)).

[18] *E.g., United States v. Holliday*, No. 12-20141-09-KHV, 2013 WL 6498984, at *3 (D. Kan. Dec. 11, 2013); *United States v. Meacham*, No. 07-10053-01, 2007 WL 3171773, at *2 (D. Kan. Oct. 25, 2007).

[19] 507 U.S. at 388 (quoting *Webster's Ninth New Collegiate Dictionary* 791 (1983)).

[20] *Id*. at 392 (internal citation omitted).

[21] *Id*. at 395.

[22] *Fernandes v. United States*, 169 F.R.D. 372, 375 (D. Kan. 1996).

[23] *Pioneer Inv. Servs.*, 507 U.S. at 395; *Holliday*, 2013 WL 6498984, at *3.

Federal Rule of Criminal Procedure 41(f) discusses rules relating to the execution and return of authorized search warrants.  Upon the government's request, Rule 41(f)(3) permits a magistrate judge to "delay any notice required by this rule if the delay is authorized by statute."[24] In these cases, the government invokes the delay notice provision contained in 18 U.S.C. § 3103a(b).

Section 3103a authorizes a magistrate judge to issue a warrant to "search and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States."[25]  It further provides that any required notice of the warrant may be delayed for a period not to exceed 30 days after its execution "if the court finds reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result (as defined in section 2705 . . .)."[26] As defined by the referenced statute, an "adverse result" includes "seriously jeopardizing an investigation."[27]

---

[24] Fed. R. Crim. P. 41(f)(3).  Notice required by the rule includes (1) where the warrant is for search and seizure of property, by providing a copy of the warrant and a receipt for the property taken to the person from whom (or from whose premises) the property was taken or by leaving a copy of the warrant and receipt at the place where the officer took the property (Rule 41(f)(1)(C)); and (2) where the warrant is for a tracking device, by serving a copy of the warrant on the person whose property was tracked within 10 days after the use of the tracking device has ended (Rule 41(f)(2)(C)).

[25] 18 U.S.C. § 3103a(a).

[26] 18 U.S.C. § 3103a(b)(1), (3).

[27] 18 U.S.C. § 2705(a)(2)(E).

For good cause shown, Section 3103a(c) also allows a magistrate judge to extend for up to 90 days any delay authorized under the statute.  The extension is conditioned upon the government making an "updated showing of the need for further delay."[28]

The Court examines below each "excusable neglect" factor to determine whether the government has met its burden.

### 1.     Danger of Prejudice to the Non-Moving Party.

The majority of the government's Supplemental Authorities brief is devoted to summarizing the investigation of  [REDACTED].[29]  The government "urges the Court to find the [summary] support[s] the finding that had the government complied with the relevant statutory deadlines, there would have been good cause shown to justify this Court further delaying notification."[30]  That is, the government seeks to show that the investigation was active and progressing on the material dates and that notice to the subscriber at those times would have prejudiced the government's ongoing investigation.

According to the government's representations, these search warrants are part of a [REDACTED] investigation that began at least as early as August 5, 2013.[31]  The investigation includes multiple purchases of [REDACTED]  by [REDACTED]  individuals whose identity is

---

[28] 18 U.S.C. § 3103a(c).  Because the statute allows an extension of "any delay" authorized under the statute, magistrate judges in this District have often signed multiple successive orders authorizing additional 90-day delay notices relating to a single search warrant.

[29] Supplemental Authorities at 3-20.  This is the spelling used throughout most of the brief, but the government also spells the subject's name as [REDACTED] and [REDACTED].  *Id.* at 3.

[30] *Id.* at 3.

[31] *Id.* at 4.

confidential. These purchases were made from [REDACTED] and others who are the subject of the investigation.

The government states that there have been [REDACTED] controlled purchases of [REDACTED] from [REDACTED] and his associates. [32]  [REDACTED] is the user of the target cell phones that are the subjects of *Warrant 1* and *Warrant 2*.   Of those controlled purchases, [REDACTED] of them occurred after August 17, 2014, which was the deadline for the government to apply for an extension of the delayed notice order with respect to *Warrant 1*. [REDACTED] purchases occurred after November 14, 2014, when a second motion to delay notice of *Warrant 1* would have been due.  As of the time of the Amended Motions, the most recent buy occurred on [REDACTED].

The deadline for the government to apply for an extension of the delayed notice order with respect to *Warrant* 2 was December 27, 2014.  On [REDACTED], law enforcement made a controlled purchase of [REDACTED] from [REDACTED].  Additionally, the government asserts that the user of Target Telephone 1 was engaging in pertinent communications with [REDACTED], whose phone was being wiretapped until [REDACTED].

Based on the information the government provides in its Supplemental Authorities, it appears that at the time the applications for extension were due, the government could have shown that such extensions were warranted. In short, there would have been reasonable cause to believe that providing immediate notification of the warrants at those times might have an adverse result, namely "seriously jeopardizing an investigation."[33] Indeed, it is likely that the

---

[32] The information set out in this paragraph and the following paragraph is taken from the sworn Application and Affidavit for Search Warrant filed in each of these cases (14-mj-8116-TJJ, ECF No. 1; 14-mj-8219-TJJ, ECF No. 1), and repeated in the government's Supplemental Authorities.

[33] *See* 18 U.S.C. §§ 2705(a)(2)(E), 3103a(b).

investigation of both the [REDACTED] and [REDACTED] drug trafficking operations would have been seriously jeopardized.

It is readily apparent that the government's investigation was ongoing on the material dates, and that notice of the warrants on the material dates could have seriously jeopardized this ongoing criminal investigation.[34]  Had the government filed timely motions for extension detailing the facts and circumstances recited above, the Court would have entered orders granting 90-day extensions.  On that basis, the Court concludes that there is little danger that granting the Amended Motions would prejudice the non-moving parties.[35]  This factor weighs in favor of the government.

>      2.      **Length of Delay and Its Potential Impact on Judicial Proceedings.**

_____

[34] While the government has demonstrated that, in these instances, the investigation was ongoing on the material dates, the Court has some concern whether that situation exists in all cases.  As the Court notes below, the government has filed a number of untimely motions for extensions of delay orders in other cases.  It is possible that in some or all of those instances, an office procedure resulted in the motions being routinely filed – albeit out of time – without the filer verifying that the investigation truly was ongoing.

[35] The Court reaches this conclusion only on the basis cited herein.  The Court specifically rejects the government's argument that "[t]here is no danger of prejudice to the non-moving party in this case as the request is an *ex parte* request, and therefore, does not require consent of the non-moving party."  Supplemental Authorities at 24. The government is entitled to an *ex parte* delay order and extensions thereof only when authorized by statute.  Fed. R. Crim. P. 41(f)(3).  The government seeks delayed notice pursuant to Section 3103a(c), which requires an updated showing of good cause for an extension of delayed notice.  It does not logically follow that an untimely motion is excused because the non-moving party is not entitled to notice. Such circular reasoning cannot excuse the government's failure to comply with its statutory obligations under Section 3103a(c) ("Any period of delay authorized by this section may be extended by the court for good cause shown, ***subject to the condition that extensions should only be granted upon an updated showing of the need for further delay.***") (emphasis added).

The government's motion for extension as to Warrant 1 is 144 days late and as to Warrant 2 is 12 days late.  Most assuredly, these delays are significant, as the government concedes.[36]  In the case of Warrant 1, the government failed to timely file a motion seeking an extension upon the expiration of the original 30-day delay notice.  By the time the government ultimately filed its motion, more than 120 days had passed and a second motion would have been due. It was not until 54 days after a second deadline had passed that the government finally filed its first motion for extension.

The government argues that its significant delay "should be viewed in the context of the entire criminal investigation."[37]  It stresses the lengthy and extensive nature of the investigation.[38]  While the Court agrees that the investigation which includes Warrants 1 and 2 has been lengthy and extensive, the Court rejects the government's suggested analysis. The government is not free to unilaterally ignore statutory requirements, such as the notice requirement under Section 3103a, merely because a criminal investigation is lengthy, extensive, or perhaps critical to a larger ongoing investigation. Indeed, Section 3103a(c) expressly conditions the extension of delayed notice on an updated showing of good cause, with no exception for significant or especially important cases.  The government has provided no authority for such a proposition

---

[36] Supplemental Authorities at 26.

[37] *Id.*

[38] The government also argues as supportive of its efforts the fact that the [REDACTED] submitted an affidavit in support of a wiretap for Target Telephone 2, but that the Assistant United States Attorney determined that the government could not show the requisite necessity under the wiretap statute to justify tapping the phone.  The Court does not find this as supportive of the government's argument; on the contrary, it serves to highlight the need to adhere to and protect the relevant statutory limits.

and the Court is aware of none which would read into the statute such exceptions. To hold otherwise could lead down a slippery slope where this Court is not willing to go.

The government also bemoans the "grave effect" that immediate notification would have on the "administration of justice," noting that it might cause the two ongoing investigations to end.[39] As discussed above, the Court appreciates the fact that law enforcement has conducted a lengthy and extensive investigation, and that immediate notice would pose a potential risk to the ultimate success of the investigation. However, the government views the issue from the wrong perspective. The relevant determination is what potential impact the government's delay might have on these judicial proceedings, and not what the potential impact of immediate notice might be.

Although lengthy, the fact is that the government's delay is not likely to impact the judicial proceedings (unless the Court denies the Amended Motions), but only because the government did not give notice when it was due and instead continued its investigation throughout the delay. To suggest that in analyzing this factor the Court should consider the lack of impact of the government's delay on this judicial proceeding is counterintuitive and would lead to an absurd result; that is, the government would be rewarded for failing to comply with statutory deadlines. Accordingly, the Court finds that this factor weighs against the government.[40]

---

[39] *Id.* at 27.

[40] The Court questions whether the impact of delay on the judicial proceedings is a relevant factor to consider in this instance, where there are no pending criminal charges against a defendant. In most instances where a court is deciding whether to extend a deadline due to excusable neglect, the court considers the impact on a judicial proceeding such as a trial date. Insofar as the warrant authorized herein might be considered a judicial proceeding, however, the Court finds that the factor does not weigh in the government's favor.

3.      **Reason for the Delay, Including Whether It was Within the Reasonable Control of the Movant.**

The reason for delay is perhaps the most important factor in the excusable neglect analysis.[41]  In *Pioneer Investment Services*, the Supreme Court noted examples of a range of possible reasons why a party would fail to meet a deadline:

> There is, of course, a range of possible explanations for a party's failure to comply with a court-ordered filing deadline. At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention. At the other, a party simply may choose to flout a deadline. In between lie cases where a party may *choose* to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence.[42]

In a case from this District, *Espy v. Mformation Technologies*,[43] Judge Bostwick noted: "The definition and application of the concept of 'excusable neglect,' a phrase used in several rules and statutes, has engendered a substantial volume of opinions, many of which are difficult to reconcile."[44]  Noting her agreement with Judge Bostwick's observation, Judge Vratil thereafter summarized the case law in this Circuit as follows:

> Generally, courts are more forgiving of missed deadlines caused by clerical calendaring errors, mathematical miscalculations of deadlines and mishandling of documents. . . .  In contrast, courts are less forgiving when missed deadlines occur because of poor lawyering, e.g., where counsel misconstrues or misinterprets the rules or law or makes poor tactical decisions.[45]

---

[41] *Scott v. Power Plant Maint. Specialists, Inc.*, No. 09-CV-2591-KHV, 2010 WL 1881058, at *2 (D. Kan. May 10, 2010).

[42] 507 U.S. at 387-88.

[43] No. 08-2211-EFM, 2009 WL 2912506 (D. Kan. Sept. 9, 2009).

[44] *Id.* at *11.

[45] *Scott,* 2010 WL 1881058, at *3-4 (internal citations omitted).

Consistent with Judge Vratil's summary, in *Mohankumar v. Dunn,*[46] Judge Brown found

excusable neglect where an attorney's support staff made a clerical error in calculating a due

date.[47]  In *Espy,* Judge Bostwick found excusable neglect where an attorney's paralegal

miscalculated a deadline.[48]

The Government explains its reason for the delay in this instance as follows:

> [W]hile the relevant dates were entered on the deadline tracking
> coversheet for the warrants and placed in the pen-register and
> warrant folder of the case file, the deadlines were nevertheless
> inadvertently overlooked. While there was a procedure in place
> that involved another individual reviewing these deadlines to
> ensure timely compliance, undersigned counsel overlooked them
> and is accountable for the error as the Government attorney
> responsible for the case.[49]

This case appears to fall in line with *Mohankumar* and *Espy*, and to involve an

unfortunate and excusable calendaring error by the responsible attorney's support staff.  To this

extent the reason for the delay would be excused under the case law in this District.

However, the delay in this case was totally within the control of the government, which

raises another significant element for the Court to consider. Moreover, this was not an isolated

instance of the government failing to timely file a motion for extension of delay notice.  The

---

[46] No. 97-1555-WEB, 1999 WL 1253053 (D. Kan. Dec. 22, 1999).

[47] *Id.* at *1.

[48] 2009 WL 2912506, at *11.

[49] Supplemental Authorities at 28.

Court's independent research[50] has uncovered 18 occasions in the past two years in which the government filed delinquent requests for such extensions.[51]  All of these cases were filed in Kansas City.

In the most egregious case, the length of time between expiration of the delay order and the Government's motion to extend delayed service of notice was approximately **twelve months.**[52] The delinquencies ranged from two weeks to twelve months, with most tardy by approximately one month.  It appears that the first motions for extension of the delay order are frequently filed after the original delay order has expired, although the motions fail to acknowledge this fact.[53]  In fact, in none of the 18 tardy requests the Court identified did the title of the motion requesting the extension indicate that it was being filed out of time.  These are disturbing omissions, regardless of whether the omissions occurred because of mere oversights or because no attorney actually reviewed the motions with sufficient care to note the delinquent nature of the filing.

In one especially notable case which involved nine delay orders, the fourth motion (dated October 22, 2013) included the government's familiar reference to a "calendaring oversight" as

---

[50] The Court's research was of limited scope and was not intended to be complete or exhaustive. The fact that a cursory search revealed so many delinquent requests leads the Court to suspect that a thorough investigation would reveal many more instances of delinquent filings.

[51] The government motions were not timely filed in the following cases: Case Nos. 09-mj-8132; 11-mj-8190; 12-mj-8229; 13-mj-8004; 13-mj-8031; 13-mj-8098 (at least two extension motions late); 13-mj-8176; 13-mj-8177; 13-mj-8183; 13-mj-8313; 13-mj-8314; 14-mj-8012; 14-mj-8184; 14-mj-8206; 14-mj-8219; 14-mj-8238; 14-mj-8243.

[52] Case No. 09-mj-8132 (Sixth 90-day order signed 3/8/2011; Seventh motion filed 5/23/12).

[53] *E.g.,* Case Nos. 13-mj-8004; 13-mj-8031; 13-mj-8176; 13-mj-8183 13-mj-8184; 13-mj-8313; 13-mj-8314; 13-mj-8012.  It is often impossible to determine whether the first motions for an extension of the original delay order are timely because the applications do not reveal when the warrant was executed or when the investigation authorized by the warrant concluded.

its reason for missing the deadline.[54]  In the cited case, the third order had expired on August 28, 2013.  Incredibly, the fifth through ninth motions (all of which were granted), even though timely filed, repeated the same language: "A Motion for Delayed Service of Notice was due August 28, 2013. Due to a calendaring oversight, the United States failed to make a timely request for an order delaying service of notice."  Clearly, no one in the U.S. Attorney's Office was even taking time to seriously review or proofread the requests for extension in that case.

The numerous delinquent filings identified through very limited investigation indicate a lax attitude on the part of the government with regard to the clear statutory delayed notice requirements. The government's record in this regard is especially troubling in that in none of the 18 identified delinquencies does the government's motion represent that it provided the notice required under 18 U.S.C. § 2703 once its authority to delay such notice had expired. In other words, the government repeatedly has disregarded the deadlines for seeking extensions while turning a blind eye to the subject's right to notice.

The missed deadline in this case appears to have resulted from a clerical error. Yet when a situation develops where missed deadlines are not a rare event but rather are something of a regular occurrence, clearly there is a much greater systemic problem at issue. Stated another way, when deadlines such as these repeatedly are overlooked and missed, it suggests an indifference and willful disregard by the government toward the statutory notice requirements.

This factor weighs against the government.

**4.     Good Faith**

---

[54] Case No. 12-mj-8229.

The Court does not question the motives or intent of the Assistant U.S. Attorney who filed the motions in these cases. The Court accepts the attorney's representation that he did not realize the motions had been filed out of time. When the tardy filings were brought to his attention, he promptly looked into the situation, requested permission to withdraw the motions, and then briefed the late filing issue. The assigned attorney has been totally candid with the Court. The Court believes that he acted in good faith and has attempted to resolve the issue the best way possible.

This factor weighs in favor of the government.

### The Court's Role in Delayed Notice of Warrants

The prevailing view among federal courts is that the Fourth Amendment does not invalidate the delayed notice aspect of such warrants.  This view, articulated in *United States v. Pangburn*[55] where the court held that notice of execution of a search warrant is required only by Rule 41 and not by the Fourth Amendment, is often repeated.

The USA Patriot Act, passed soon after 9/11 at the behest of the Department of Justice, contains amendments and additions to already-existing statutes.  Attorney General John Ashcroft testified before the House Judiciary Committee that the proposed legislation would "provide law enforcement with the tools necessary to identify, dismantle, disrupt and punish terrorist organizations before they strike again."[56]  In fact, the delayed notice warrants are rarely used to investigate alleged acts of terrorism.  Of the 6,480 warrants and 4,649 extensions requested by prosecutors in Fiscal Year 2013, only 39 warrants and 12 extensions involved the offense of

---

[55] 983 F.2d 449, 449-50 (2d Cir. 1993).

[56] *Admin.'s Draft Anti-Terrorism Act of 2001: Hearing Before the H. Comm. on the Judiciary*, 107th Cong. (2001).

terrorism.[57]  By far the most warrants are sought in drug offense cases.[58]  The number of extensions sought ranged from one to 26, with two being the most frequently reported extension number.[59]

It is also notable that a disproportionately high number of delayed notice applications are filed in this District.  Indeed, according to the most recent statistics available, in fiscal year 2013 the District of Kansas ranked third (behind only the Southern District of California and the Southern District of Texas) in the number of such applications filed with 555, and the top four districts accounted for over a quarter of all such applications reported nation-wide.[60]

Congressional testimony on the Act focused on physical searches of spaces or packages.  One commentator states that there is no mention, in any of the discussion of Section 3103a, "that this general authority would also apply to search warrants that did not involve physical intrusions into homes, businesses, and packages. . . [and] [a]s recently as 2011, a congressional report characterized 'delayed notice search warrants' as involving covert searches of homes and businesses."[61]  The experience in this Court is that delayed notice warrants typically do not involve searches of places, but instead are directed primarily or perhaps exclusively to cell phone information.  In other words, while the law was enacted with the intention that law enforcement

---

[57] *Report of the Director of the Administrative Office of the U.S. Courts on Applications for Delayed-Notice Search Warrants and Extensions*, Fiscal Year 2013.

[58] *Id.* (drug offenses specified in 84% of applications reported).

[59] *Id.*

[60] *Report of the Director of the Administrative Office of the United States Courts on Applications for Delayed-Notice Search Warrants and Extensions.*

[61] Jonathan Witmer-Rich, *The Rapid Rise of Delayed Notice Searches, and the Fourth Amendment "Rule Requiring Notice,"* 41 Pepp. L. Rev. 509, 541 (2014).

would use it to combat terrorism by searching places, it has quickly morphed into a tool for prosecuting drug and other crimes through surveillance.  The Fourth Amendment certainly holds a place in the discussion.

The proliferation of Section 3103a warrants and extensions thereof, the lack of Fourth Amendment protection, and the types of offenses in which they are most frequently an investigatory tool all point to the increased need for vigilance on the part of the judiciary. Prosecutors frequently obtain extensions – multiple extensions – of delayed notice merely by reciting in conclusory fashion the same words, that immediate service of a notice of the execution of the warrant would "seriously jeopardize an ongoing investigation."  With such a low threshold, it is "essential that an objective mind of a neutral magistrate weigh the need to invade [a person's] privacy in order to enforce the law," and "it is necessary for a § 3103a warrant to strictly comply with the requirements of that section."[62]

### Conclusion

The Court decides the ultimate issue of whether the government has sufficiently demonstrated excusable neglect by weighing its assessment of each of the four relevant factors. On balance, the Court concludes that the government has satisfied its burden.  The Court so concludes because the government has made a clear showing of facts which establish that reasonable cause existed to grant the delay extensions on the material dates, and the government has satisfied the Court that it acted in good faith in this particular instance.  That does not, however, minimize the Court's concerns with respect to the government's recurring practice of delinquently filing its motions for extensions of delayed notice, and the Court specifically rejects the government's argument as to lack of prejudice to the non-moving party and as to length of

---

[62] *United States v. Espinoza*, No. CR-05-2075-7-EFS, 2005 WL 3542519, at *2 (E.D. Wash. Dec. 23, 2005).

delay and its potential impact on judicial proceedings. Accordingly, the Court grants the Amended Motions for delayed notification, but with the following caveats.

The Court expects that the government will no longer miss its statutory deadlines to seek extensions of delay orders. Should exceptional circumstances arise under which the government does miss a deadline and therefore is required to file a motion out of time, any such future motion should (1) state in the title that it is being filed out of time; (2) recite the chronology of the initial delayed notice deadline and each subsequent deadline, motion and order for extension; and (3) explain the reason for the failure to meet the deadline – simply noting a calendaring error will not be sufficient – so as to satisfy the excusable neglect standard. **Now that the government's awareness of these delinquencies is a matter of record and the Court has provided instruction for future filings, the Court expects the government to be more diligent and puts the government on notice that future missed deadlines in delay orders are much less likely to be viewed as excusable neglect.**

In addition, all future motions for extension of delay orders should state (1) the date of the original order; (2) the date on which the authorized monitoring period ended; (3) the date on which the warrant was returned; and (3) the dates of all previous motions for extension and the orders issued pursuant thereto, along with the length of the extension granted in each order.[63]

**IT IS HEREBY ORDERED** that the Amended Motion for Delayed Service of Notice (ECF No. 8) in Case Nos. 14-mj-8116-TJJ and 14-mj-8219-TJJ is granted. The Court is concomitantly filing an Order for Delayed Service of Notice, with the period of delay deemed to have commenced on January 7, 2015.

---

[63] The requirements the Court imposes are not onerous and certainly are not out of the ordinary. Indeed, in those rare instances where a party needs to file a motion out of time, this is the kind of basic information that routinely is and should be included in all belatedly filed motions. *Cf.* D. Kan. R. 6.1 (setting forth required contents of motion for extension of time to perform an act).

**IT IS FURTHER ORDERED** that this case shall no longer be sealed.  Until further order from this Court, the following documents shall be filed under seal: (1) Document Numbers 1 through 8; (2) an unredacted version of this Memorandum and Order; and (3) all future documents, including the concomitantly filed Order for Delayed Service of Notice.  The Clerk shall file a redacted version of this Memorandum and Order without placing it under seal.

**IT IS FURTHER ORDERED** that upon unsealing this case, the Clerk shall remove from the docket sheet all information which identifies the Defendant.

**IT IS SO ORDERED.**

Dated this 13th day of February, 2015 at Kansas City, Kansas.

<u>s/  Teresa J. James</u>
Teresa J. James
United States Magistrate Judge

21